IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

In re Petition of

NEWBROOK SHIPPING CORP. and    *    MISC. NO. JKB-20-0150
FALCON CONFIDENCE SHIPPING
LTD.,
                                                    *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Newbrook Shipping Corporation ("Newbrook") and Falcon Confidence Shipping Ltd. ("Falcon Confidence Shipping") (collectively, the "Applicants") applied to this Court for judicial assistance pursuant to 28 U.S.C. § 1782 to obtain documentary and testimonial evidence from Global Marketing Systems, Inc. ("GMS") and Anil F. Sharma ("Sharma") (collectively, the "Discovery Targets") for use in foreign proceedings (the "Petition"). (ECF No. 1.)  GMS moves to strike service, dismiss Applicants' miscellaneous action, and quash the issued subpoenas pursuant to Federal Rules of Civil Procedure 12 and 45 because the Petition does not satisfy the requirements of 28 U.S.C. § 1782 and service was not made on GMS.  No hearing is required.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons set forth below, GMS' motion (ECF No. 3) will be DENIED.  Applicants may choose to file a motion proposing alternative service of Sharma's subpoena.  Applicants are ORDERED to modify the deposition notices in this case to provide for remote depositions (*i.e.* via Zoom) and to tender fees and mileage, if any, for GMS and Sharma's

depositions.  GMS is ORDERED to respond to Applicants' subpoena within thirty (30) days from the date of this Memorandum and Order.

## I.    *Background*

Under South African law, a party may petition a court for the arrest of a ship to provide security for the shipowner's unresolved debts or obligations. (Mot. Strike Mem. Supp. at 2 n. 1, ECF No. 3-1.)  This case involves the efforts of Nadella Corporation ("Nadella"), a business incorporated in Nevis, to arrest the MV 'Falcon Traveller' (the "Falcon Traveller"), which was previously owned by Newbrook, and the MV 'Falcon Confidence' (the "Falcon Confidence"), which is owned by Falcon Confidence Shipping. (Appl. ¶¶ 3–5, ECF No. 1.)  In 2015, Nadella obtained an *ex parte* order from the High Court of South Africa to execute the arrest of the Falcon Traveller to provide security for claims in arbitration proceedings in Singapore regarding the arrest of the MV 'Falcon Carrier' (the "Falcon Carrier"). (Mikhail A.X. Charles Decl. ¶ 15, ECF No. 1-1 [hereinafter "Charles Decl."].)  Newbrook challenged the arrest of the Falcon Traveller, and upon review in 2016, the High Court of South Africa found that the arrest must be set aside because the Falcon Traveller is not associated with the Falcon Carrier. (*Id.* ¶ 17; Appl. Ex. A, ECF No. 1-1.)  The South Africa High Court did not find, however, that the arrest was wrongful as a matter of law, noting that the evidence indicated that "Nadella ha[d] a subjectively honest belief that it was entitled to arrest the [Falcon Traveller] as security for its claim." (Appl. Ex. A at 7 n. 2.)  In 2019, Nadella obtained an *ex parte* order to arrest the Falcon Confidence. (Charles Decl. ¶ 21.)  The High Court of South Africa declined Falcon Confidence Shipping's application to set aside

2

the arrest with costs, and Falcon Confidence Shipping has appealed this decision, which is currently pending. (*Id.* ¶¶ 23–25.)

Applicants sought judicial assistance from this Court for discovery in two foreign proceedings: (1) the pending proceeding before the Western Cape Division of the High Court of South Africa between Nadella and the Falcon Confidence and Falcon Confidence Shipping (the "South African Action"), and (2) a contemplated proceeding in Nevis against Nadella and other currently unknown "co-conspirators" (the "Contemplated Action"). (Appl. ¶¶ 8, 11.) First, in the South African Action, Applicants sought information forming the basis of Nadella's claim that the Falcon Confidence is related to the Falcon Carrier, both to defend against Nadella's claims and to pursue its own claims against persons involved in the alleged wrongful arrest of the Falcon Confidence. (*Id.* ¶¶ 9–10.) Second, Applicants sought discovery to allow them to identify "defendants and co-conspirators that should be named" in the Contemplated Action "for the claims of: (i) civil conspiracy; and possible other claims." (*Id.* ¶ 11.) Applicants argued that because "[a]ll business for Nadella is conducted outside Nevis and thought to be transacted between many parties," the co-conspirators "are likely outside the jurisdiction of Nevis." (*Id.* ¶ 13.) In support of its § 1782 petition, Applicants submitted a declaration by Attorney Mikhail Alexei Xavier Charles ("Attorney Charles"), whose law firm in Turks & Caicos, British West Indies has been retained to represent Applicants in the Contemplated Action. (Charles Decl. ¶¶ 1–6.)

Applicants named GMS, a Maryland-incorporated entity, and Sharma, a Maryland resident, as the Discovery Targets of their petition. (Appl. ¶¶ 2, 6.) Applicants allege that GMS is Nadella's registered agent and Sharma "is believed to own and control Nadella," and accordingly, Applicants expect that each has relevant information about the South African Action and Contemplated Action. (*Id.* ¶¶ 6, 7.) Neither of the Discovery Targets is a party to the South

3

African Action, and Applicants have not determined whether GMS or Sharma will be named as a party in the Contemplated Action. (*Id.* ¶ 20.) Applicants sought to depose the Discovery Targets about, *inter alia*, "[t]he relation, affiliation, or connection between the Falcon Carrier and the Falcon Confidence," other issues pertaining to the Discovery Targets' relationships to Nadella, and Nadella's intent or motive in arresting the Falcon Traveller and Falcon Confidence. (Appl. Ex. B at 9, ECF No. 1-2.) Applicants further sought documents concerning the affiliation between the Falcon Carrier and the Falcon Confidence as well as Nadella's corporate structure. (*Id.* at 10.) The sample subpoenas attached to the Petition indicate that Applicants requested to depose the Discovery Targets in Baltimore. (*Id.* at 2–3.)

On March 27, 2020, this Court granted Applicants' *ex parte* § 1782 petition. (ECF No. 2.) Over the course of two months, Applicants attempted to serve GMS at its office in Cumberland, Maryland three times and attempted to serve Sharma at his Cumberland residence six times using two different process servers. (*See* Opp'n to Mot. Strike Ex. A, ECF No. 5-1.) A process server ultimately left GMS' subpoena and deposition notice at GMS' Cumberland office on May 22, 2020 with a GMS employee who told the process server that he was not authorized to accept service on behalf of GMS or Sharma. (Kamal Datta Aff., ECF No. 3-2.) The GMS staff member then forwarded the subpoenas to GMS' legal counsel. (*Id.*)

GMS now moves to strike service, quash the issued subpoenas, and dismiss Applicants' miscellaneous action pursuant to Federal Rules of Civil Procedure 12 and 45. (Mot. Strike at 1.) GMS notes that "[m]ost of these objections apply with equal force as to the information sought from Dr. Sharma if and when he is served" (Mot. Strike Mem. Supp. at 4 n. 2), and the "wherefore clause" of the memorandum states, "GMS (and Sharma) respectfully request that the Court vacate

the Order and quash the subpoenas" (*Id.* at 21). For the sake of economy, the Court addresses each

of the arguments in GMS' motion to strike with respect to both GMS and Sharma.

## II.    *Service of Subpoena and Deposition Notice Under Federal Rule of Civil Procedure 45*

GMS moves this Court to strike service and quash the subpoenas issued in this case.

(Mot. Strike at 1.) GMS argues that (1) Applicants' service on GMS must be stricken as

improper, (2) the deposition notice was defective, and (3) the subpoenas must be quashed under

Federal Rule of Civil Procedure 45. (*See* Mot. Strike Mem. Supp. at 5–7.)

### A.    *Service of Process*

First, GMS argues that service must be stricken as improper because a process server left

the subpoena and deposition notice with a GMS employee who was not authorized to accept

service. (*Id.* at 5–6.) Under Federal Rule of Civil Procedure 45(b)(1), service of a subpoena

"requires delivering a copy to the named person." The District of Maryland has found that in-

hand personal service is not required "so long as the service is in a manner that reasonably

ensures actual receipt of the subpoena by the witness." *Hall v. Sullivan*, 229 F.R.D. 501, 505 (D.

Md. 2005). Indeed, "the purpose of this Rule is to 'mandate effective notice' rather than

'slavishly adhere to one particular type of service.'" *Greenway Enters., Inc. v. CSI Eng'g, P.C.*,

Civ. No. AW-07-2762, 2008 WL 11509733, at *1 (D. Md. May 23, 2008) (quoting *Hall*, 229

F.R.D. at 504). When the subpoenaed entity is a corporation, Federal Rule of Civil Procedure

4(h)(1) provides that service may occur pursuant to the state law where the district court is

located or on "an officer, a managing or general agent, or any other agent authorized by

appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(A)–(B); 4(e)(1).

Under the Maryland Rules of Civil Procedure, "if a good faith effort to serve the resident agent,

president, secretary, or treasurer has failed, service may be made by serving the manager, any

director, vice president, assistant secretary, assistant treasurer, or *other person expressly or impliedly authorized to receive service*." Md. R. 2-124(d) (emphasis added).

By leaving the subpoena with a GMS employee who was not an officer of GMS and who explicitly disclaimed his authorization to receive service of process (*see* Kamal Datta Aff. ¶¶ 3–4), Applicants did not serve GMS through personal in-hand delivery. This does not doom Applicants' service on GMS, however, because the Court declines to impose a requirement of personal in-hand service where the Applicants' mode of service reasonably ensured GMS' actual receipt of the subpoena (especially given that such service was made on the process server's third attempt), *see Hall*, 229 F.R.D. at 505, and it is undisputed that GMS has actual notice of this Petition. *See Braxton v. Jackson*, Civ. No. DKC-18-1946, 2019 WL 4573381, at *3 (D. Md. Sept. 20, 2019) (finding actual notice of the case where the defendant submitted filings to the court). What occurred here is sufficient. Accordingly, the Court DENIES GMS' motion to strike service on GMS.

On the other hand, Applicants' repeated attempts to serve Sharma have been ineffective (*see* Opp'n to Mot. Strike Ex. A), and unlike GMS, Sharma has not made any filings in this Court to establish his actual notice of the case. The Court NOTES that Applicants may choose to file a motion proposing alternative service of Sharma's subpoena.

### B. *Sufficiency of Subpoenas and Deposition Notices*

Further, GMS contends that the subpoenas were defective for failing to provide the requisite witness fees, failing to allow a reasonable time to comply, and seeking to depose GMS and Sharma more than 100 miles away from their respective locations. (*See* Mot. Strike Mem. Supp. at 6–7.)

6

Federal Rule of Civil Procedure 45(b)(1) provides that where the subpoenaed party's attendance is required, service of the subpoena requires "tendering the fees for 1 day's attendance and the mileage allowed by law."  GMS and Applicants disagree as to whether the deposition notices left at GMS' office required in-person attendance. (*See* Opp'n to Mot. Strike at 8; Reply Mem. Supp. of Mot. Strike at 5.)  Although neither party has submitted the subpoenas and deposition notices that were ultimately left at GMS' office, the sample subpoenas attached to Applicants' Petition indicate that the depositions would take place at the Baltimore office of Applicants' counsel, not remotely.  (*See* Appl. Ex. B.)  Accordingly, the Court ORDERS the modification of the subpoenas of GMS and Sharma to provide that the depositions will be conducted remotely[1] (*i.e.* via Zoom or other teleconferencing platform) and to tender the fees and mileage, if any, for GMS' attendance at the remote deposition.

Rule 45 further provides that a court must quash or modify a subpoena that, *inter alia*, "fails to allow a reasonable time to comply" or "requires a person to comply beyond the geographical limits specified in Rule 45(c)."  Fed. R. Civ. P. 45(d)(3)(A)(i), (ii).  GMS' subpoena and deposition notice were delivered on May 22, 2020 and compelled production of documents by May 25, 2020. (Mot. Strike Mem. Supp. at 7.)  The three days that GMS was given to comply with the subpoena would certainly not be reasonable under courts' interpretations of Rule 45, *see, e.g., Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 47, 49–50 (D.D.C. 1998), and the Court finds that modification of this timeframe is appropriate.  The Court ORDERS that GMS respond to this subpoena within thirty (30) days of the date of this Memorandum and Order.  Given the modification of the deposition notice to provide for a remote deposition over Zoom or other teleconferencing platform, the deposition

---

[1] Zoom depositions have become a convention in this district during the ongoing COVID-19 pandemic, and they are appropriate in the circumstances of this case.

notice no longer requires GMS or Sharma to travel more than 100 miles (or at all) to comply, so the Court declines to address GMS' argument that the subpoena compels GMS to comply outside of the geographical bounds of Rule 45(c).

### III.   *Application for Judicial Assistance Under § 1782*

GMS also moves this Court to dismiss Applicants' Petition for judicial assistance under 28 U.S.C. § 1782.  (Mot. Strike at 1.)  Section 1782(a) enables federal courts "to provide judicial assistance to foreign or international tribunals or to 'interested person[s]' in proceedings abroad." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  In determining whether to grant judicial assistance under § 1782, a court considers (1) whether it *may* grant relief under the statute, and (2) whether it *should* grant relief under the discretionary factors set forth by the Supreme Court in *Intel*. *See id.* at 247.

#### A.   *Statutory Requirements*

Section 1782(a) requires that (1) the request is made "by a foreign or international tribunal," or by "any interested person"; (2) the request seeks evidence, including the "testimony or statement" of a person or the production of "a document or other thing"; (3) the person from whom discovery is sought "resides or is found" in the district; and (4) the evidence is "for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a); *see Servotronics, Inc. v. Boeing Co.*, 954 F.3d 209, 210 (4th Cir. 2020).  The Court analyzes each factor with respect to Applicants' Petition.

First, Applicants qualify as interested persons.  The Supreme Court has explained that a petitioner with "participation rights" in foreign proceedings "qualifies as an 'interested person' within any fair construction of that term." *Intel*, 542 U.S. at 242.  Applicants are claimants in the South African Action and plan to initiate the Contemplated Action, so this prong is easily met.

The second and third factors are likewise satisfied because Applicants seek depositions and documents from Discovery Targets found in the District of Maryland. Sharma resides in Cumberland, Maryland, and GMS, which is incorporated in Maryland, has an office in Cumberland. *See Consorcio Ecuatoriano de Telecommunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (finding that a company "is found in the district" where it has an office and does business). The location of Nadella, from whom Applicants do not seek discovery in their Petition, is irrelevant to this factor. *See Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (declining to consider "a principal-agent relationship, or whether documents being held by the subpoenaed party belong to a foreign party" for purposes of the § 1782 statutory analysis); *see also Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (explaining that courts should not "read into [§ 1782] requirements that are not rooted in its text").

Fourth, the evidence must be sought "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782. "A § 1782 applicant satisfies the statute's 'for use' requirement by showing that the materials she seeks are to be used at some stage of a foreign proceeding." *Mees*, 793 F.3d at 295. Such proceeding need not be pending or imminent but must be "within reasonable contemplation." *Intel*, 542 U.S. at 258–59. Under this factor, courts have required that such proceedings are "more than speculative," meaning that there are "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Consorcio Ecuatoriano de Telecommunicaciones*, 747 F.3d at 1270 (quoting *In re Letter of Request from the Crown Prosecution Serv. of the U.K.*, 870 F.2d 686, 692 (D.C. Cir. 1989)). "If the judge doubts that a proceeding is forthcoming, or suspects that the request is a 'fishing expedition,' the district court should deny the request." *In re Request for Assistance for Ministry of Legal Affairs of Trinidad*

*and Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988), *abrogated on other grounds by Intel*, 542 U.S. 241; *see In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, 2014 WL 3404955, at *7 (S.D.N.Y. July 9, 2014) ("Courts must embrace Congress's desire that broad discovery be available for parties involved in international litigation while also guarding against the potential that parties may use § 1782 to investigate whether litigation is possible in the first place . . .").

Although Applicants fail to demonstrate to the Court's satisfaction that the Contemplated Action in Nevis is more than speculative, the Petition does meet this prong in seeking discovery for use in the South African Action.[2] *See Consorcio Ecuatoriano de Telecommunicaciones*, 747 F.3d at 1269–70 (explaining that the court need not consider whether the pending arbitration proceeding between the parties satisfied the "for use" requirement where the applicants adequately demonstrated that the discovery was sought for contemplated foreign civil and criminal proceedings within a reasonable time).

### B.  *Discretionary Factors*

Even when an applicant's petition satisfies the statutory requirements under § 1782, a court retains broad discretion over whether to grant judicial assistance. *See Intel*, 542 U.S. at 264. Under *Intel*, courts consider:

(1)  whether "the person from whom discovery is sought is a participant in the foreign proceeding";

(2)  "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

---

[2] With respect to the Contemplated Action, Applicants seek discovery "to determine who to name as defendants" and "pursue, as may be necessary, claims against all persons or entities involved in the civil conspiracy or other tortious acts." (Charles Decl. ¶ 36.) Without more details, Applicants do not show that the Contemplated Action will be initiated within a reasonable time, and discovery sought only for this proceeding appears to be used "to investigate whether litigation is possible in the first place." *In re Certain Funds*, 2014 WL 3404955, at *6.

(3)   "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4)   whether the § 1782(a) request is "unduly intrusive or burdensome."

*Id.* at 264–65. Courts' exercise of this discretion is guided by the twin congressional aims of § 1782: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 28 (2d Cir. 1998) (quoting *Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)).  Per the Court's determination that the Contemplated Action in Nevis does not satisfy the "for use" requirement and discovery for such action may not be sought under § 1782, *see supra* § III.A, the Court analyzes the discretionary factors only with respect to the South African Action.

### 1.   Discovery Targets' Role in the Foreign Proceedings

Where a discovery target is a participant in the foreign proceeding, courts find that "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a non-participant in the matter arising abroad." *Intel*, 542 U.S. at 264; *see also Goenechea v. Davidoff*, Civ. No. CCB-15-3384, 2016 WL 560689, at *3 (D. Md. Feb. 11, 2016); *Oncology Found. v. Avanza Dev. Servs., LLC*, Civ. No. PX-17-1445, 2017 WL 2376769, at *1 (D. Md. May 30, 2017).  While a foreign tribunal would likely be able to compel a party to the proceedings to produce evidence, discovery from a non-participant in the foreign proceedings "may be unobtainable absent § 1782(a) aid." *Intel*, 541 U.S. at 264.  Unlike with respect to the mandatory statutory factors, *see supra* § III.A, courts eschew formalistic analysis for determination of the real party from whom documents are sought. *See Kiobel*, 895 F.3d at 245 (finding that the first *Intel* factor weighs against granting a § 1782 petition for discovery of documents from U.S. counsel of

11

a foreign corporation); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) (same).

Here, neither GMS nor Sharma is a party to the South African Action, which weighs in favor of granting judicial assistance. GMS argues that the discovery Applicants seek is obtainable without § 1782 relief (Mot. Strike Mem. Supp. at 12), which Applicants dispute (*see* Charles Decl. ¶ 32). The Court declines to opine on the technical issue of discoverability under South African law, *see In re Request for Judicial Assistance from Seoul Dist. Criminal Court, Seoul, Korea*, 555 F.2d 720, 723 (9th Cir. 1977), and in any event, this factor does not require that applicants be unable to obtain the evidence in any other way. Further, unlike in *Kiobel* and *Schmitz*, the discovery in this case is sought from Sharma and GMS, not from Nadella. *See Kiobel*, 895 F.3d at 245; *Schmitz*, 376 F.3d at 85.

### 2. *Nature of the Foreign Tribunal, Character of the Suit, and Receptivity of the Foreign Government*

Second, courts consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. The foreign tribunal's receptivity to the U.S. court's assistance "generally weighs in favor of granting such petitions." *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 105 (D.D.C. 2010). In the Fourth Circuit, courts "have applied the general approach that, in the absence of a foreign court's clear rejection of the assistance, the § 1782 application should be granted." *In re Polymer Solutions Int'l, Inc.*, Civ. No. DKC-18-1864, 2019 WL 1239778, at *6 (D. Md. March 18, 2019).

Here, GMS argues that the High Court of South Africa would not be receptive to this Court's judicial assistance because the South African Court previously found that Nadella did not wrongfully arrest the Falcon Traveller. (Mot. Strike Mem. Supp. at 13–14.) There is no indication,

however, that the South African Court would reject this Court's assistance with respect to the issues pending in the South African Action, which centers around Nadella's arrest of the Falcon Confidence. Accordingly, this factor weighs in favor of granting Applicants' Petition.

### 3. *Circumvention of Foreign Proof-Gathering Restrictions*

The third *Intel* factor weighs against approval of a § 1782 application where the applicant uses the statute to attempt to circumvent foreign proof-gathering standards. *Intel*, 542 U.S. at 264–65; *see, e.g.*, *In re Kreke Immobilien KG*, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013), *abrogated on other grounds by In del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) ("Because the locus of this action is so clearly in Germany and there is no suggestion that any documents sought are outside the jurisdictional reach of the German courts, this Court is concerned that [the applicant's] application is an attempt to circumvent foreign discovery procedures."). This factor entails neither a discoverability requirement nor "a 'quasi-exhaustion requirement' . . . that would force litigants to seek 'information through the foreign or international tribunal' before requesting discovery from the district court." *Euromepa*, 51 F.3d at 1098 (quoting *Malev*, 964 F.2d at 100); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012). Nonetheless, "a district court should be vigilant against a petitioner's attempt to 'replace a [foreign] decision with one by [a U.S.] court.'" *In re Kreke Immobilien KG*, 2013 WL 5966916, at *6 (quoting *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 195 (S.D.N.Y. 2006), *abrogated on other grounds by In del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019)).

Here, although Applicants have not, to the Court's knowledge, sought evidence from the Discovery Targets in the South African Action, there is no indication that Applicants petition this Court to supplant South African proof-gathering rules. Accordingly, this factor favors granting judicial assistance.

#### 4. *Extent of the Burden on Discovery Targets*

Fourth, the Supreme Court has provided that "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265. "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information." *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016). Under both § 1782 and the Federal Rules, courts retain broad discretion to limit unduly intrusive or burdensome discovery. *Malev*, 964 F.2d at 102.

Here, GMS acknowledges in its motion that the documents sought relate to the South African Action and does not otherwise explain why such requests are unduly intrusive or burdensome.[3] (*See* Mot. Strike Mem. Supp. at 18.) As such, the Court finds no reason to reject or trim Applicants' request on these grounds.

#### C. *Bad Faith*

Where a court determines that a § 1782 application "is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto." *Euromepa*, 51 F.3d at 1101 n. 6. GMS alleges that Applicants petition this Court for judicial assistance "for the sole purpose of harassing GMS and gaining some untoward leverage in the international battle taking place in South Africa and Singapore." (Mot. Strike Mem. Supp. at 19.) GMS argues that Applicants' bad faith in bringing their Petition is demonstrated by the fact that evidence sought from the Discovery Targets would be discoverable under South African law. (Mot. Strike Mem. Supp. at 19–20.) As explained above, *supra* § III.A, the Court declines to examine the substantive law of a foreign jurisdiction, and in any case, the

---

[3] In its reply, however, GMS disputes that the discovery Applicants seek "is in any way relevant or could even be used in the South African proceeding." (Reply Mem. Supp. of Mot. Strike at 9, ECF No. 7.)

Court does not consider a showing that such evidence would be discoverable in South Africa sufficient on its own to demonstrate Applicants' bad faith in bringing their Petition.

### IV. Conclusion

For the foregoing reasons, an Order shall enter DENYING GMS' motion to strike service of GMS' subpoena, quash GMS' subpoena, and dismiss Applicants' miscellaneous action. Applicants may choose to file a motion proposing alternative service of Sharma's subpoena. Applicants are ORDERED to modify the deposition notices in this case to provide for remote depositions (*i.e.* via Zoom or other teleconferencing platform) and to tender fees and mileage, if any, for GMS and Sharma's attendance at the remote depositions. GMS is ORDERED to respond to Applicants' subpoena within thirty (30) days from the date of this Memorandum and Order.

DATED this _____ day of November, 2020.

BY THE COURT:

James K. Bredar
Chief Judge