## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**In re Petition of**

**NEWBROOK SHIPPING CORP. and**      \*      **MISC. NO. JKB-20-0150**
**FALCON CONFIDENCE SHIPPING**
**LTD.**

                               \*

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM

On March 24, 2020, Newbrook Shipping Corporation ("Newbrook") and Falcon Confidence Shipping Limited ("Falcon Confidence Shipping" and, collectively with Newbrook, the "Applicants") applied to this Court for judicial assistance pursuant to 28 U.S.C. § 1782 to obtain documentary and testimonial evidence from Global Marketing Systems, Inc. ("GMS") and its CEO Anil F. Sharma ("Sharma" and, collectively with GMS, the "Discovery Targets") for use in foreign proceedings (the "Petition"). (ECF No. 1.) After the Court granted the Petition ex parte, GMS entered an appearance and moved to strike service, dismiss the action, and quash the issued subpoenas. (ECF No. 3.) GMS argued that it was improperly served,[1] that the Petition did not satisfy the requirements of § 1782, and that the subpoenas failed to comply with Federal Rule of Civil Procedure 45. (*Id.*) Upon consideration of the parties' filings, the Court issued a Memorandum and Order requiring certain modifications to the subpoenas but denying the Motion to Quash. (ECF No. 11.) GMS appealed this disposition. (ECF No. 12.)

On review, the Court of Appeals vacated certain aspects of this Court's Order and remanded for further consideration of the propriety of the Petition. (ECF No. 27.) This Court then requested supplemental briefing from the parties to explain how the Court of Appeals' Judgment

---

[1] Sharma appears to still have not been served at all.

1

and developments in the litigation underlying the Petition modified their positions.  (ECF No. 29.)
In response, the Applicants filed a Motion to Modify the Subpoenas (ECF No. 30), which GMS
has opposed.  (ECF No. 33.)[2]  This matter is ripe for disposition, and no hearing is needed.  *See*
Local Rule 105.6 (D. Md. 2021).  For the following reasons, an Order shall issue quashing the
previously issued subpoenas and dismissing the Petition without prejudice.

## I.     Background

The background in this case prior to the Court of Appeals' Judgment is set forth in this
Court's prior Memorandum as well as the Court of Appeals' Opinion and will only be briefly
reiterated here.  (*See* ECF Nos. 10, 27-1.)

### A. Facts Previously Presented

This matter arises initially from an arbitration in Singapore between Nadella Corporation
("Nadella") and Falcon Carrier Shipping Limited ("FCSL") over the breach of a warranty
provision in the contract for the sale of the MV *Falcon Carrier* ("*Carrier*").  (*See* ECF No. 27-1
at 3–4.)[3]  To obtain security for that pending arbitration, Nadella arrested the MV *Falcon Traveller*
("*Traveller*"),[4] a ship owned by Newbrook, in South Africa.  (*Id.* at 4–5.)  Despite the difference
in ownership, Nadella believed that the *Carrier* and the *Traveler* were "associated" vessels under
South African law and therefore the *Traveller* could be arrested as security for the pending claim
Nadella had against the *Carrier*.  (*Id.* at 5 & n.2.)  A court in South Africa ultimately rejected

---

[2] In its Opposition, GMS notes that Sharma is entering a limited appearance to adopt GMS's arguments for quashing
the subpoena and dismissing the petition while continuing to maintain that he has not been served.  (*See* ECF No. 33
at 1 n.1.)  Because it concludes that Sharma has not been served, the Court will refer only to GMS as the arguing party
in this Memorandum.
[3] On August 2, 2022, GMS filed a notice with the Court stating that the arbitration resolved in Nadella's favor.  (*See*
ECF No. 34.)  It did not suggest that the resolution of the arbitration had any effect on the matters presently pending
before this Court.
[4] As the Court of Appeals explained, the "arrest" of a ship refers to the practice in admiralty of seizing a ship as a
means of enforcing liabilities *in rem* against the vessel itself to avoid confusion created because "[a]dmiralty disputes
often involve harm on the high seas or in multiple jurisdictions, and ship ownership can be uncertain."  (ECF No. 27-
1 at 3 n.1.)

Nadella's position, concluding that the two ships were not "associated" under South African law and that the arrest of the *Traveller* had been wrongful. (*Id.* at 5.) Following this disposition, Newbrook sued Nadella seeking damages for the *Traveller's* wrongful arrest. (*Id.*) Applicants represent that this action remains pending. (*See* ECF No. 30 at 1.)

Following the disposition of the relationship between the *Carrier* and the *Traveller*, Nadella (again in South Africa) arrested another of Applicants' ships: the MV *Falcon Confidence* ("*Confidence*"), which belongs to Newbrook's wholly-owned subsidiary and co-applicant, Falcon Confidence Shipping. (ECF No. 27-1 at 5–6.) Applicants represent that the action to determine whether the *Carrier* and *Confidence* are "associated" as well as a parallel action seeking damages for the wrongful arrest of the *Confidence* remain pending in South Africa. (ECF No. 30 at 1–2.) In the initial Petition, Applicants sought discovery related *only* to the case disputing whether the *Carrier* and the *Confidence* were "associated" vessels rather than the two pending damages actions. (*See* ECF No. 1 ¶ 8 ("[T]he Applicants seek evidence to support the currently pending proceeding . . . in the High Court of South Africa, Western Cape Division . . . in Case No. AC5-19 in the matter between Nadella and the Falcon Confidence and Falcon Confidence Shipping[.]").)

In addition, the Applicants sought discovery for use in a potential lawsuit against Nadella in Nevis (the "Contemplated Action"). (ECF No. 1 ¶¶ 5, 11.) The Contemplated Action intended to allege a civil conspiracy between Nadella and other unknown persons (including the Discovery Targets) who had collaborated to harm the Applicants through the wrongful arrest of their vessels. (*Id.* ¶¶ 11–12.) Despite representing in March 2020 that Applicants had hired counsel who expended "considerable time and effort [ ] reviewing the facts of Applicants' case and determining

3

the proper steps to take and what causes of action are appropriate[,]" it does not appear that the Contemplated Action has ever been pursued. (*Id.* ¶ 16.)

### B. *This Court's Prior Memorandum and Order*

After the Court granted, ex parte, the Applicants' requests for subpoenas to be served on the Discovery Targets, GMS entered its appearance and moved to quash those subpoenas and dismiss this case. (ECF No. 3.) In support of this Motion, GMS argued that (1) the subpoenas were not properly served; (2) the subpoenas were deficient under Federal Rule of Civil Procedure 45; and (3) the Petition failed to meet the requirements justifying discovery under 28 U.S.C. § 1782. (*See generally id.*) In ultimately denying this Motion, the Court reached three principal conclusions. First, GMS's objections to the service of process were insufficient to warrant quashing the subpoena because "Applicants' mode of service reasonably ensured GMS' actual receipt of the subpoena[.]" (ECF No. 10 at 6 (citing *Hall v. Sullivan*, 229 F.R.D. 501, 505 (D. Md. 2005)).) Second, although the subpoenas did not comply with certain Rule 45 requirements, they could be modified to be procedurally satisfactory. (*Id.* at 6–8.) Third, assessing the substance of the Petition under § 1782, the Court concluded that evidence sought in relation to the Contemplated Action did not satisfy the mandatory condition of being "for use in a proceeding in a foreign or international tribunal" due to the speculative nature of the Contemplated Action. (*Id.* at 9–10.) In contrast, it concluded that the evidence sought for use in the South African proceeding satisfied both the mandatory and discretionary § 1782 criteria. (*See id.* at 8–15.) It did not, however, make specific findings as to which of Applicants' discovery requests were related to the South African proceeding. The Court entered a separate Order implementing these findings and denying GMS's Motion. (ECF No. 11.)

4

### C. The Court of Appeals' Judgment

On review, the Court of Appeals vacated this Court's Order and remanded for further proceedings. (*See* ECF No. 27.) Specifically, it identified two grounds that this Court should further develop in resolving the pending dispute. First, the Court of Appeals found that this Court's Order generally denying GMS' Motion failed to explicitly implement its conclusion that the Contemplated Action was too speculative to provide a basis for § 1782 discovery. (*See* ECF No. 27-1 at 11–12.) It further concluded that "[t]his record's complexity counsels us to vacate and remand this issue to the district court, to determine which evidence, if any, is really 'for use' in the South African action." (*Id.* at 12.) After making that determination, the Court of Appeals also directed this court to revisit the "discretionary factors [which] should be applied to each thing sought by the application." (*Id.* at 13.)

Second, it held that this Court erred in concluding that the service of the subpoena on GMS had been adequate because it did not satisfy the service requirements of the Federal Rules of Civil Procedure. (*Id.* at 14–16 (internal quotation marks and citation omitted) ("To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.").) After rejecting the view that "[a]ctual notice with no delivery" satisfied the service requirements for a subpoena to a corporation under Rule 45, the Court of Appeals remanded to this Court to "address whether an appropriate agent—as identified in Maryland Rule 2-124(d) or Federal Rule 4(h)(2)—was served in this case." (*Id.* at 16–17.)

### D. Proceedings Following Remand

Following the issuance of the Court of Appeals' mandate, this Court entered an Order directing supplemental briefing to address "(1) any material developments in foreign litigations;

5

(2) the extent to which Applicants continue to seek discovery under § 1782; (3) the grounds on which Respondent opposes the propriety of ordering such discovery; and (4) whether service has been properly effectuated in this matter." (ECF No. 29 at 2.) In response to this Order, the Applicants filed supplemental briefing expanding their request for discovery. Although they no longer seek discovery related to the Contemplated Action, they now represent that *all* of the initial discovery was for use in the South African action and that they need discovery on additional topics for use in three additional cases in South Africa. (*See* ECF No. 30 at 4, 7–8.)

As restructured, the factual basis for the Petition can be summarized as follows. Nadella has arrested two of Applicants' ships, the *Traveller* and the *Confidence*, in South Africa. Each of those arrests has created two litigations: (1) a claim by Nadella to substantiate the grounds of the arrest by establishing that each arrested ship is "associated" with the *Carrier*; and (2) a claim against Nadella for damages for wrongful arrest. (ECF No. 30 at 1–2.) This symmetry is broken only by the fact that in the *Traveller-Carrier* association litigation, Nadella seeks to set aside the prior judgment that the two ships are not associated on the grounds of fraud. (*Id.* at 2.)

Applicants represent that there are three principal issues across these litigations: (1) the substantive question of the association of the relevant vessels; (2) disputes regarding Nadella's ability to pay various securities related to the litigations; and (3) a "dirty hands" defense in the *Confidence-Carrier* association case based on Nadella's failure to pay costs in relation to the *Traveller-Carrier* association case. (*See* ECF No. 30 at 4–6.) Based on these issues, they seek the following twenty categories of discovery from the Discovery Targets:

1. All Documents demonstrating a relation, affiliation, or connection between the *Carrier* and the *Confidence*;

6

2. All Documents sufficient to prove the ultimate beneficial owner of Nadella;

3. All Documents sufficient to prove the board of directors of Nadella;

4. Any Articles of Incorporation, Operating Agreement, or by-laws for Nadella;

5. Any share certificates or shareholder agreements for Nadella;

6. Any board of director resolutions or meeting minutes for Nadella;

7. Any power of attorney given by Nadella;

8. Any power of attorney given to Nadella;

9. Any votes or proxy votes for or on behalf of Nadella;

10. All Documents sufficient to prove the ownership of Nadella through any correspondence by or to the Discovery Targets;

11. All Documents sufficient to prove Sharma's ownership or control of Nadella;

12. All Documents sufficient to prove the Discovery Targets' ownership or control of Nadella;

13. All Documents regarding Nadella's financial ability to pay the cost order rendered in 2015 and potential cost order that may be assessed against it by the South African Court;

14. All Documents showing payments from GMS or Sharma to Nadella;

15. All Documents showing payments to GMS or Sharma from Nadella;

16. All Documents regarding Nadella's past noncompliance with South African Court Orders;

17. All Documents regarding Nadella's intent in arresting the *Traveller*;

18. All Documents regarding Nadella's intent and motive in arresting the Falcon Confidence;

19. All Documents to support any allegation that Applicants provided false information in

Case No. A74/2015;[5] and

20. All Documents to support any allegation raised in Case No. A52/2021.[6]

(*See* ECF No. 1-2 at 8; ECF No. 30 at 7–8.)  Applicants also continue to pursue, without apparent

modification, their requests to depose both Sharma and GMS through a corporate representative.

(*See* ECF No. 1-2 at 7.)  GMS, on behalf of itself and Sharma, continues to argue that the Court

should dismiss the Petition in its entirety.  (ECF No. 33 at 16.)

## II.    *Legal Standard*

The statutory text of § 1782(a)

> identifies four mandatory conditions that must be satisfied before an application
> can be granted: (1) The application must be made to the "district court for the
> district in which the person resides or is found"; (2) the application must come from
> an "interested person" or a foreign tribunal; (3) the application must seek evidence,
> including "testimony" or "a document"; and (4) the evidence sought by the
> application must be "for use in a proceeding in a foreign or international tribunal."

*In re Newbrook Shipping Corp.*, 31 F.4th 889, 894 (4th Cir. 2022) (citing *Intel Corp. v. Advanced*

*Micro Devices, Inc.*, 542 U.S. 241, 246 (2004)).

Even if these mandatory statutory conditions are satisfied, "'a district court is not *required*

to grant a § 1782(a) discovery application simply because it has the statutory authority to do so.'"

*In re Eli Lilly & Co.*, 37 F.4th 160, 167–68 (4th Cir. 2022) (quoting *Intel*, 542 U.S. at 264–65)

(emphasis in original) (hereinafter "*Eli Lilly II*").  The Supreme Court, in *Intel*,

> identified four factors for district courts to consider in exercising discretion under
> § 1782, namely: (1) whether "the person from whom discovery is sought is a
> participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the
> character of the proceeding underway abroad, and the receptivity of the foreign
> government or the court or agency abroad to U.S. federal-court assistance"; (3)
> "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-

---

[5] The case that concluded that the *Carrier* and the *Traveller* were not associated vessels.
[6] The case seeking to set aside the judgment in A74/2015 on the basis that it was procured by a fraud on the court.

gathering restrictions or other policies of a foreign country or the United States";
and (4) whether the request is "unduly intrusive or burdensome."

*Id.* *Intel* does not, however, "mandate that every factor support a court's exercise of discretion or that all factors need even be considered.  Rather, it provided the factors to illuminate considerations relevant to the decision of whether to authorize assistance for use in proceedings before a foreign tribunal." *Id.*

### III.   Analysis

As originally presented, this case—though factually complex—presented two fairly logical sets of discovery requests.  First, for use in the South African litigation, it requested documents from the Discovery Targets related to the relationship between the *Carrier* and the *Confidence*, the central substantive issue in the only South African case that Applicants initially identified as a basis for seeking discovery.  (*See* ECF No. 1 ¶ 8; ECF No. 1-1 ¶ 25 ("The issue of whether the Falcon Confidence and Falcon Carrier are related is still pending before the South African Court. . . . The instant Application seeks information for use in the pending foreign proceeding, the South African Action, on this issue.").)  Second, it requested a far broader set of documents related to the corporate governance of Nadella, both generally and in relation to the Discovery Targets, to substantiate Applicants' civil conspiracy claim in the Contemplated Action.  (ECF No. 1-1 ¶ 35 ("Specifically, the Applicants seek disclosure from the Discovery Targets of the following categories of documents related to the Contemplated Action, including all documents sufficient to show [various corporate governance matters related to Nadella].").)  While the Court's prior Memorandum and Order did not delineate between these two categories with utmost clarity,[7] given

---

[7] In particular, certain aspects of this Court's prior analysis could be read to suggest it concluded that some parts of requests 2-12 were related to the litigation in South Africa rather than the Contemplated Action.  This was, in large part, based on GMS's position in the prior briefing that those "documents all relate directly to the action in South Africa[.]"  (ECF No. 3-1 at 18.)  GMS now takes the position that developments in the South African litigations mean

the Court's prior, undisputed conclusion that the Contemplated Action could not form the basis of a § 1782(a) application, clarifying the scope of permissible discovery on remand appeared a straightforward task based on Applicants' apparent bifurcation of their discovery requests.

Applicants have, however, substantially recast the bases for their discovery requests in their supplemental briefing. Now, all of the discovery requests initially related to the Contemplated Action are purportedly necessary to support a "dirty hands" defense in the South African action—a basis not raised in the initial Petition. (ECF No. 30 at 4; *see also* ECF No. 23-1 ¶ 44 (noting that the "dirty hands" issue was heard by the South African court as early as May 2019).) Moreover, Applicants posit that additional categories are now required to effectively litigate additional cases in South Africa. *(Id.* at 6–7.) In support of these novel and expansive requests, Applicants provide only a handful of orders from the various South African litigations which provide little clarity to this Court about the status of those disputes.

The Court understands that this lack of clarity may be in part attributable to the lack of precision in its prior, vacated § 1782(a) analysis. That said, assessing the reframed record against the standards of § 1782(a) shows that discretionary considerations counsel against granting the vast majority of Applicants' discovery requests. Indeed, doing so raises profound doubts that the Court has the full story necessary to even make a conclusive judgment as to the discretionary factors enumerated in *Intel*.[8]   This concern is compounded by the fact that Applicants' supplemental briefing makes no effort to address the service issues identified by the Court of Appeals' mandate, raising additional concerns that efforts expended in crafting an appropriate

---

that, of the original requests, only request 1 remains potentially relevant to claims at issue in South Africa. (ECF No. 33 at 9.)

[8] The snippets of the South African record before this Court further accentuate these concerns, with Applicants' conduct before that court subjecting them to at least two punitive cost orders for a "strategy of obstruction and delay [ ] adopted in order to prevent the hearing of oral evidence." (*See* ECF No. 23-1 ¶¶ 39–40, 56.)

discovery order are a futile exercise. In sum, applying the § 1782(a) framework to these concerns confirms that, while many of Applicants' requests satisfy the mandatory statutory requirements, discretionary considerations warrant dismissal of the Petition. That said, given the lack of guidance in the Court's prior Order, this dismissal will be without prejudice to refiling a properly supported application.

### A. Mandatory § 1782(a) Factors

As before, of the four mandatory § 1782(a) factors, the parties dispute only the fourth: whether the requested discovery is "for use in a proceeding in a foreign or international tribunal." *Newbrook Shipping*, 31 F.4th at 894. GMS argues that, as reformulated, every discovery request in the Petition fails to satisfy this requirement. As the Court of Appeals explained, a document is "for use" in a foreign proceeding if "the court [ ] find[s] that there is a reasonable possibility that the evidence sought 'will be employed with some advantage or serve some use in the proceeding.'" (ECF No. 27-1 at 11 (quoting *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015)).

### 1. Requests 1-12

As to the first twelve requests, which are tied to the originally cited *Confidence-Carrier* association litigation, GMS argues that an April 28, 2021 judgment in the "South African Action stat[es] that no further discovery would be entertained in that case [which] closes the door on the remaining documents and deposition topics sought in conjunction with that case[.]" (ECF No. 33 at 10.) However, the vast majority of the judgment appears to discuss a motion to compel discovery, suggesting that certain aspects of discovery in that South African case remain live. (*See* ECF No. 23-1 ¶¶ 7 ("[T]he parties were to make discovery in terms of (Uniform) Rule 35 of all documents relating to the issue which was the subject of oral evidence, i.e. the issue of whether or not the MV *Falcon Confidence* was an associated ship."), 51 (emphasis added) ("[R]espondents

11

have failed to make out a factual or legal basis for an Order *broadening* the referral to evidence, which was previously made.").)  Given this, GMS has not satisfactorily explained its sweeping position that discovery has been entirely closed in the *Confidence-Carrier* association litigation.

The argument is stronger as to requests 2-12, however, as Applicants have explicitly tied the need for those documents to their "dirty hands" defense in the *Confidence-Carrier* association litigation. (*See* ECF No. 30 at 4 ("Requests 2 through 12 in the Original Subpoenas all have the same underlying rationale for their use in the pending South African Action . . . [and are] related to Applicant's pending defense in the South African Action of Nadella's 'dirty hands[.]'").)  The April 28, 2021 judgment appears to reject discovery on this topic, concluding that certain arguments made by Applicants in that court "cannot serve as a basis for the Court to now make an Order referring the 'dirty hands' aspect to oral evidence" and characterizing the request for such an order as an instance of "an abuse of process by litigants who seek such an order for the purpose of delaying the resolution of a matter, or so that they might engage in a 'fishing expedition' with a view to ascertaining whether there might be a possible defence available to them." (ECF No. 23-1 ¶¶ 51–52 (alternate spelling in original).)

Ultimately, however, even though the South African court has not permitted discovery on this topic, this does not end the "for use" inquiry.  Rather, other courts examining whether discovery sought could be "for use" have "focused [ ] on the *practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." *In re Accent Delight Intern. Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017); *see also In re Campuzano-Trevino*, Civ. No. SAG-22-0365, 2022 WL 570254, at *4 (D. Md. Feb. 24, 2022) (finding document not for use where there was no evidence it "could be employed with some advantage, or would otherwise have an effect on the resolution of the merits" in the foreign tribunal).  In the April 28,

2021 judgment, the South African court suggested that Applicants could potentially admit additional evidence (obtained outside of South African discovery processes) "in the main or counter application (by way of a supplementary affidavit to which the applicant will have the right to respond), and its inclusion thereby as part of the evidence which the Court will ultimately have to consider when the applications are finally heard and decided[.]" (ECF No. 23-1 ¶ 52.) Thus, there appears to be at least a possibility that discovery obtained through the Petition could be "for use" in that case. Of course, given the language in the April 28, 2021 judgment, whether the "§ 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions" is a question reserved for the discretionary portion of the Court's analysis. *Eli Lilly II*, 37 F.4th at 168. Although far from conclusive, the record suggests there is at least some possibility that requests 2-12 could be "for use" in the *Confidence-Carrier* association litigation, which is sufficient to establish the statutory factors. GMS also does not provide any developments in the last year which show that the Petition does not satisfy § 1782(a)'s requirements because they are not categorically "for use" in the *Confidence-Carrier* association litigation. Accordingly, the Court cannot conclude that these document requests fail the "for use" requirement due to the fact that they can potentially be introduced into the *Confidence-Carrier* association litigation based on the record before this Court.

### 2. *Requests 13-18*

Applicants aver that Requests 13-18 relate to the two litigations asserting damages for wrongful arrest and seeking to require Nadella to post security for these actions. They primarily seek discovery into Nadella's financial status and any financial relationships between Nadella and the Discovery Targets. (*See* ECF No. 30 at 7.) Requests 17 and 18 also seek discovery into documents related to Nadella's intent in arresting the *Traveller* and *Confidence*. (*Id.*) GMS objects

13

that Applicants' failure to tie these requests to any particular proceeding is inappropriate because it renders it "impossible for this Court to make findings as to the mandatory and discretionary factors without blindly speculating as to which case or cases each discovery request pertains or how it is relevant to that proceeding." (ECF No. 33 at 12–13.)  In support of this argument, it cites to the Court of Appeals' holding that "the applicant must show that each thing (or at least each category of things) sought if 'for use' in the foreign proceeding." *Newbrook Shipping*, 31 F.4th at 895.

However, this overreads the Court of Appeals, whose use of the word "the" likely stemmed from the fact that, at the time, only one foreign proceeding was at issue.  The statutory text of § 1782(a) only requires that the discovery sought be "for use in *a* proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a) (emphasis added).  Here, Applicants have explained that the question of Nadella's ability to pay ordered costs or post ordered securities is a recurring theme across the South African litigations.  (*See* ECF No. 30 at 5–7.)  Similarly, they have noted that the need for this security turns on Nadella's intent in arresting its ships.  (*Id.* at 6.)  These explanations satisfactorily establish why each discovery category is "for use" in one or more of the South African proceedings.  "Once a section 1782 applicant demonstrates a need for extensive discovery for aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate, by more than angry rhetoric, that allowing the discovery sought (or a truncated version of it) would disserve the statutory objectives." *In re Polymer Sols. Intern., Inc.*, Civ. No. DKC-18-1864, 2019 WL 1239778, at *3 (D. Md. Mar. 18, 2019) (quoting *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011)).  GMS's argument, which certainly does not establish that the discovery sought would not be for use in *any* of the lawsuits, fails to meet this shifted burden. Again, while the sudden multiplication of relevant foreign litigations and the nature of the

documents sought may render Applicants' revised request inappropriate for *discretionary* reasons, these additional requests do satisfy the mandatory factors set out by § 1782(a).

### 3. Requests 19-20

The Court concludes, however, that Applicants' final two requests, which relate to the litigation brought by Nadella to set aside the South African judgment that the *Carrier* and the *Traveller* were not "associated" ships, do not satisfy the "for use" requirement of § 1782(a). Applicants represent that although preliminary documentation in this action was filed on September 28, 2021, Nadella has not yet filed "its Particular of Claims (similar to a complaint)," despite being required to make such a filing on or before October 28, 2021. (*See* ECF No. 30 at 6–7.) As the Court previously explained, the proceeding in which documents are sought "for use" in must be "'more than speculative, meaning that there are 'reliable indications of the likelihood that proceedings will be instituted within a reasonable time.'" (ECF No. 10 at 9 (quoting *Consorcio Ecuatoriano de Telecommunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014)).) Here, although a case has been filed, Applicants represent that Nadella has entirely failed to prosecute it—making it doubtful that any discovery could be promptly used in that case. As with the Contemplated Action, "[i]f the judge doubts that a proceeding is forthcoming . . . the district court should deny the request." *In re Request for Assistance for Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1998), *abrogated on other grounds by Intel*, 542 U.S. at 241. Here, although the action is marginally more progressed than the Contemplated Action, the Court is not satisfied that the necessity of documents to defend this action is anything beyond speculative given that Nadella has not pursued this particular case in nearly a year. (*See* ECF No. 30 at 7 ("Nadella was required to file its Particular of Claims (similar to a complaint) [by October 28, 2021]. Tellingly, Nadella

failed to timely make this required filing, and still has not made such a filing, over seven months later.").) Accordingly, the Court concludes that documents sought in connection with that action are not "for use" in a foreign proceeding and requests 19 and 20 fail the statutory criteria of § 1782(a). Further developments in that case may, of course, change this analysis.

### B. Discretionary § 1782 Considerations

While Applicants' reframing of their requests as entirely stemming from the four South African litigations means that many of these requests satisfy the mandatory statutory requirements of § 1782(a), this shift creates substantial doubts that the Petition should be granted when the Court considers "how the discretionary *Intel* factors should be applied to any evidence [that is otherwise permissibly sought]." (ECF No. 27-1 at 14.) The only request for which the record does not create such doubts is request 1, the only request expressly tied to the South African litigation by the original filing. (*See* ECF No. 1-1 ¶ 28 ("Specifically, the Applicants seek information regarding the circumstances surrounding Nadella's claim in the South African Action that the Falcon Confidence is a related ship to the Falcon Carrier, which was the sole basis for Nadella's arrest of the Falcon Confidence[.]").) On the basis of the record before the Court, Applicants fail to establish that the remaining requests are permissible under the discretionary *Intel* factors.

### 1. Receptivity of the Foreign Tribunal and Circumvention of Foreign Discovery Rules – Requests 2-12

Applicants now state that requests 2-12 are necessary to advance a "dirty hands" defense in the *Confidence-Carrier* association litigation. (ECF No. 30 at 4.) Considered through this lens, two discretionary factors strongly counsel against granting discovery on these issues. First, discovery on these issues appears to "conceal[] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *Intel*, 542 U.S. at 265. In the aforementioned April 24, 2021 judgment, the relevant South African court considered an "application for an Order

16

referring the 'dirty hands' issue for oral evidence." (*See* ECF No. 23-1 at 14.) In denying this application, the court explained that the "contention that [Nadella] has 'dirty hands' and should as a result not be permitted to obtain any relief from the Court is an aspect which has been squarely raised on the paper and is before the Court for determination"—thus requiring no additional discovery. (*Id.* ¶ 52.) Indeed, the court concluded that "the application was certainly ill-conceived" and a "misguided attempt to obtain evidence[.]" (*Id.* ¶ 53.) The rejection of discovery on this issue in South Africa counsels against this Court's granting of a similarly grounded request. *See RF Micro Devices, Inc. v. Xiang*, Civ. No. WLO-12-0967, 2013 WL 12136502, at *3 (M.D.N.C. Nov. 4, 2013) (concluding that "[t]he Chinese court's denial of Plaintiff's discovery motion, the Chinese court's failure to request this court's assistance, and Plaintiff's acknowledgement of the availability (and related rarity) of Chinese courts ordering discovery are all reasons for this court to deny Plaintiff's § 1782 motion").

Second and relatedly, "the receptivity of the foreign tribunal is particularly important in light of the purposes of § 1782(a)." *See In re Finserve Grp. Ltd.*, Misc. No. RBH-11-2044, 2011 WL 5024264, at *3 (D.S.C. Oct. 20, 2011) (internal quotation marks and citation omitted); *see also Intel*, 542 U.S. at 265 ("[A] court presented with a § 1782(a) request may take into account . . . the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."). For instance, "[i]f there is reliable evidence that the foreign tribunal would not make any use of the requested material, it may be irresponsible for a district court to order discovery, especially where it involves substantial costs to the parties involved." *Finserve Grp.*, 2011 WL 5024264, at *3. Here, the exact type of discovery Applicants seek from GMS— discovery into Nadella's corporate structure—is the exact type of discovery that the South African court rejected, suggesting it would not find such material particularly useful in resolving the

17

pending "dirty hands" issue. (*See* ECF No. 23-1 ¶¶ 47–48 (discussing how Applicants sought discovery on the basis of a report connecting Nadella to GMS)); *see also Eli Lilly II*, 37 F.4th at 168 (affirming denial of § 1782(a) application where applicant sought documents that "overlap[ped] significantly" with documents sought in foreign proceeding).

### 2. *Undue Burden – Requests 2-18*

As developed, the record also fails to answer basic questions about why requiring the Discovery Targets to produce documents related to Nadella's corporate governance, finances, and decision making would not pose an undue burden.[9] Generally, "§ 1782 discovery should be denied where an applicant 'can obtain the information from other sources without imposing a burden' on a non-party to the foreign action." *In re Elliott Assocs. L.P.*, Misc. No. RJC-21-0160, 2022 WL 1159692, at *4 (W.D.N.C. Apr. 19, 2022) (quoting *In re Lazaridis*, 865 F. Supp. 2d 521, 528 (D.N.J. 2011)). Here, the Applicants provide no reason why discovery related to Nadella for use in the South African litigations cannot be obtained from Nadella in the South African litigations, such that it is appropriate to order its production from third parties in the United States. Indeed, to the extent that the record sheds light on this issue, it suggests that the reason Applicants are seeking discovery in this roundabout matter is that they have been unsuccessful in obtaining it in the foreign tribunal, further counseling against granting the Petition. *See In re Eli Lilly and Co.*, Misc. No. TSE-21-0017, 2022 WL 152376, at *5 (E.D. Va. Jan. 18, 2022) (denying § 1782(a) application where applicants "already requested [the sought] information in [ ] European suits,

---

[9] In its prior Memorandum, this Court suggested that an undue burden argument would not be successful as to several discovery categories based on GMS's representation that the "documents [sought] all relate directly to the action in South Africa[.]" (*See* ECF No. 10 at 14 (quoting ECF No. 3-1 at 18).) As noted, GMS has withdrawn this position based on developments in that case and the reformulated discovery requests' relationship to the South African actions are now far more circumspect, rendering the burden of producing these documents more likely to be "undue." *See Robinson v. Quicken Loans, Inc.* Civ. No. CAE-12-0981, 2012 WL 6045836, at *3 (S.D.W. Va. Dec. 5, 2012) (internal quotation marks and citation omitted) ("[T]he undue burden category encompasses situations where the subpoena seeks information irrelevant to the case.").

suggesting that [a subsequent] § 1782 effort [was] an attempt to circumvent foreign discovery procedures") (hereinafter "*Eli Lilly I*").

### 3. *Timeliness – Requests 13-18*

Adding to the list of questions not answered by the record is why Applicants now seek additional discovery on grounds that appear to have been available at the time of the initial Petition. Specifically, the litigation and specific issues underpinning requests 13-18 existed and were contested at the time of the original Petition. (*See* ECF No. 30 at 1–2 (noting the relevant actions began in 2018 and 2019, respectively), 5 (noting that the issue of Nadella's ability to pay costs has been litigated since at least December 23, 2015).) Despite this, Applicants provide no explanation for why requests 13-18 were not included in the initial Application, or why the Court should now consider them. *Cf. Mees*, 793 F.3d at 303 (emphasis added) (noting that generally "a party may file a new application upon a *significant change in circumstances*"). Absent some material change in circumstances that now creates a demand for this discovery, the afterthought nature of these additional requests suggests they have been added on as "a 'fishing expedition' or a vehicle for harassment" which would warrant denial of these requests. *See In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011).

### C. *Disposition of the Petition*

In sum, consideration of the discretionary § 1782(a) factors establishes that only request 1—a request that was timely made, is unrelated to Nadella, and compliments rather than circumvents the South African discovery orders in the record before this Court—satisfies the core objective of the statute: "to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws." *Intel*, 542 U.S. at 261. Given these conclusions, the Court could

19

grant the Petition, while limiting it to request 1 and the deposition topics associated with that request. (*See* ECF No. 33 at 8 (arguing that there are only two deposition topics related to document request 1).) That said, two final considerations lead the Court to conclude that dismissing the Petition without prejudice to refiling is the appropriate exercise of its discretion on the facts of this case as currently presented.

First, as noted, the vast majority of the requests satisfy the mandatory statutory conditions of § 1782(a), being improper only on the additional factors that guide this Court's exercise of discretion. In addition, the rejection of several of these requests comes not from affirmative grounds for denial, but rather an incomplete record that leaves the Court without the ability to definitively resolve whether granting these requests would be unduly burdensome or otherwise improper in light of the status of discovery in the South African litigations. That said, this lack of clarity may be a result of the lack of guidance provided by this Court's prior analysis and many of these questions seem like they should have ready answers, potentially allowing Applicants to pursue discovery beyond request 1 with a filing that more squarely addresses the Court's concerns. Alternatively, should Applicants conclude, upon further consideration, that additional requests cannot be properly supported, they may refile a narrow application seeking the documents in Request 1 and to depose the Discovery Targets on any associated topics.

### D. Service of Process

Second, the Petition has not been properly served as to either of the Discovery Targets, and the Applicants have made no representations that the errors in service can be corrected.[10] As the Court of Appeals explained, service that provides actual notice is insufficient and any effective

---

[10] A generous interpretation of the record is that this, too, is merely the product of a lack of clarity from the Court, with Applicants waiting to confirm that they may seek any discovery before attempting to serve and enforce any permissible subpoenas.

service must strictly comply with the requirements for service set out in the Federal Rules of Civil Procedure. (*See* ECF No. 27-1 at 15.) Here, this requires service be made as to GMS in either of the two manners prescribed by Federal Rule of Civil Procedure 4(h)(1). The record does not establish service that complies with Maryland law, which requires service on a corporation to be effectuated by

> serving its resident agent, present secretary, or treasurer. But "if a good faith attempt to serve the resident agent, president, secretary or treasurer has failed, service may be made by serving the manager, any director, vice president, assistant secretary, assistant treasurer, or other person expressly or impliedly authorized to receive service of process."

(*Id.* (quoting Maryland Rule 2-124(d)).) Here, service was only effectuated on Kamal Datta, who told the process servicer that he was not an officer at GMS and that he "was not authorized to accept service of that subpoena on behalf of GMS or Dr. Sharma." (ECF No. 3-2 at 1.) Under the Court of Appeals' mandate, service on Datta was insufficient because he expressly disclaimed either the status or the authority to accept the subpoena required by Maryland law. (ECF No. 27-1 at 17 (remanding for the Court to "address whether an appropriate agent—as identified by Maryland Rule 2-124(d) or Federal Rule 4(h)(2)—was served in this case.").)

Service is similarly insufficient under the second method outlined by Rule 4(h), which permits delivery to "an officer, a managing or general agent, or any other agent *authorized by appointment or by law* to receive service of process." Fed. R. Civ. P. 4(h)(1)(B) (emphasis added). In their supplemental briefing, Applicants do not explain why this initial service of process is sufficient, nor do they outline any additional efforts made since the Court of Appeals' judgment to perfect service of process. (*See generally* ECF No. 30; *see also* ECF No. 29 at 2 (directing parties to file supplemental briefing on "whether service has been properly effectuated in this matter").)

In addition to the procedural enforcement issues this failure of service creates, a brief review of the record and publicly available documents suggests additional lurking problems with a § 1782(a) application that could be clarified by establishing adequate service on the Discovery Targets. First, although GMS was incorporated in the United States and can still be found here for purposes of § 1782(a), its website explains that it is "currently headquartered in Dubai." *Overview*, Global Marketing Systems, Inc. (last visited Aug. 5, 2022), https://www.gmsinc.net/about-us. This potential move abroad, exacerbated by GMS's apparently limited Maryland staff, suggests an additional reason that ordering discovery in the United States may be an undue burden. *See Eli Lilly I*, 2022 WL 152376, at *5 (rejecting as unduly burdensome § 1782(a) application that "in essence requests that a substantial volume of data and materials located abroad be brought into the United States for subsequent use in proceedings abroad, a nonsensical result"), *aff'd, Eli Lilly II*, 37 F.4th at 168.  Though establishing service of process on GMS would not categorically resolve these concerns, it would at least shift the burden to GMS to explain the status of its Maryland-based operations. *See Polymer Sols.*, 2019 WL 1239778, at *3 ("Inasmuch as relevant evidence is presumptively discoverable under § 1782, the burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application, should rest with the party opposing the application.") (quoting *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998)).

The service problems with GMS are compounded by Applicants' failure to serve Sharma, who is GMS's registered agent in Maryland. *Global Marketing Systems, Inc.*, Maryland Business Express (last visited Aug. 5, 2022), https://egov.maryland.gov/BusinessExpress.   Applicants' failure to serve Sharma, or any officer of GMS, despite nine apparent attempts to do so further

22

diminishes the Court's confidence that, on the present record, GMS retains a meaningful presence in Maryland.[11] (*See* ECF No. 5 at 6.)

While, due to the nature of these sources, the Court makes no definitive findings as to the ability of Applicants to effectively serve either of the Discovery Targets in Maryland, their failure to do so leaves the Court unable to find that requiring the Discovery Targets to comply with Applicants' requests for discovery would be appropriate and not unduly burdensome. (*See* ECF No. 30 at 8 (requesting that the Court "requir[e] the Discovery Targets to comply with the Proposed Revised Subpoenas within thirty days of any Order entered on this Motion").) These doubts also provide further grounds for the Court's view that the Petition should be dismissed unless and until Applicants are able to provide more clarity on the discretionary considerations for granting § 1782(a) discovery.

To summarize, the present record before the Court does not provide it with the clarity necessary to find that ordering discovery from the Discovery Targets in this matter would be a prudent exercise of its discretionary authority under § 1782(a). In particular, Applicants' reformulated claims predominantly seek discovery about Nadella for use in various South African litigations without an explanation for why this discovery cannot be sought directly from Nadella— who is a party to those same litigations. *In re Elliott Assocs. L.P.*, 2022 WL 1159692, at *4 (internal quotation marks and citation omitted) ("§ 1782 discovery should be denied where an applicant can obtain the information from other sources without imposing a burden on a non-party to the foreign action.") Moreover, Applicants raise several new document discovery requests without a cogent explanation for why those requests were not previously before the Court, despite

---

[11] Indeed, some public sources suggest that Sharma, like his company, now resides in Dubai, though this would, of course, conflict with his status as GMS's resident agent in Maryland. *See Anil Sharma*, International Chamber of Shipping, (last accessed Aug. 5, 2022), https://www.ics-shipping.org/person/anil-sharma.

23

their apparent relevance at the time of the initial Petition. Problematically, to the extent the record reveals any answers as to why these documents are not being sought in South Africa, it suggests that they have been requested there and rejected by the relevant South African court as improperly sought or irrelevant. (*See* ECF No. 23-1 ¶¶ 51–53); *Intel*, 542 U.S. at 265 ("[A] district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions[.]"); *Eli Lilly II*, 37 F.4th at 168 (affirming denial of § 1782(a) application where foreign court "issued a judgment . . . adjudicating four discovery motions . . . [a]nd the categories of documents that that decision describe[d applicant] having requested [ ] appear[ed] to overlap significantly with those requested [in the] § 1782 application"). Last, the challenges with proper service on the Discovery Targets (challenges that have not yet been overcome) further suggest that pursuing discovery from these Targets in the United States may be unduly burdensome if not outright improper. *Eli Lilly II*, 37 F.4th at 168 (affirming denial of § 1782 application where "[applicant] in essence requests a substantial volume of data and materials located abroad be brought into the United States for subsequent use in proceedings abroad, a nonsensical result").

The Court acknowledges that the lack of clarity on these issues may stem from its own lack of clarity in its prior Memorandum resolving the discovery disputes as initially framed. Thus, to be explicit, should Applicants seek to refile the Petition, they should be prepared to satisfactorily bolster the record to establish: (1) that any discovery sought related to Nadella for use in South African litigation cannot be obtained from Nadella in South Africa for reasons other than Applicants' inability to obtain discovery orders from South African courts; and (2) that any discovery requests not included in the original Petition are justified by materially changed circumstances between the time of the original application and the modified request. They should also be aware that the Court is unlikely to find that any discovery sought is not unduly burdensome

24

unless the discovery targets retain a sufficient presence in Maryland such that requiring them to produce discovery in the United States would not be a "nonsensical result." *Eli Lilly II*, 37 F.4th at 168. Absent these showings, the Court cannot conclude that the issuance of a subpoena to the Discovery Targets is an appropriate exercise of its discretion under § 1782(a). It will, accordingly, dismiss the present petition, as modified by supplemental briefing, without prejudice to refiling should Applicants believe they can make a satisfactory showing as to the discretionary § 1782(a) factors.

### IV.    *Conclusion*

For the foregoing reasons, a separate Order shall issue dismissing without prejudice Applicants' § 1782(a) application (ECF No. 1) as modified by supplemental briefing (ECF No. 30).

DATED this ___9___ day of August, 2022.

BY THE COURT:

_____

James K. Bredar
Chief Judge